```
             UNITED STATES DISTRICT COURT
         FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
```

TERRY LEWIS REITZ,                :
                                  :CIVIL ACTION NO. 3:18-CV-921
        Plaintiff,                :
                                  :(JUDGE CONABOY)
        v.                        :
                                  :
NANCY A. BERRYHILL,               :
Acting Commissioner of            :
Social Security,                  :
                                  :
        Defendant.                :
_____

# MEMORANDUM

Pending before the Court is Plaintiff's appeal from the Acting Commissioner's denial of Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). (Doc. 1.) Plaintiff protectively filed his application on March 20, 2015, alleging disability beginning on January 1, 2014. (R. 15.) After Plaintiff appealed the initial July 10, 2015, denial of the claim, a video hearing was held by Administrative Law Judge ("ALJ") David Romeo on June 19, 2017. (*Id.*) ALJ Romeo issued his Decision on August 11, 2017, concluding Plaintiff had not been under a disability as defined in the Social Security Act ("Act") from January 1, 2014, through the date of the decision. (R. 22.) Plaintiff requested review of the ALJ's decision which the Appeals Council denied on March 1, 2018. (R. 1-6.) In doing so, the ALJ's decision became the decision of the Acting Commissioner. (R. 1.)

Plaintiff filed this action on May 1, 2018. (Doc. 1.) He asserts in his supporting brief that the Acting Commissioner's determination should be reversed for the following reasons: 1) the ALJ improperly determined that Plaintiff had the RFC to perform medium work; 2) the ALJ did not address Plaintiff's non-repaired proximal biceps tendon tear; and 3) the ALJ improperly overruled Plaintiff's counsel's objection to the vocational expert. (Doc. 9 at 6.) For the reasons discussed below, the Court concludes Plaintiff's appeal is properly granted.

## **I. Background**

Plaintiff was born on January 2, 1959, and was fifty-four years old on the alleged disability onset date. (R. 21.) Plaintiff has a high school education and has past relevant work as a laborer. (*Id.*) In the May 1, 2015, Disability Report, Plaintiff alleged his ability to work was limited by the following: subscapularis tendon tear, right shoulder; superior labral tear, right shoulder; and rotator cuff tear, right shoulder. (R. 203.)

*A. MEDICAL AND OPINION EVIDENCE*

Because Plaintiff's substantive argument focuses on his inability to lift more than twenty pounds frequently (Doc. 9 at 8-12; Doc. 11 at 1-5), the Court focuses on evidence related to his lifting capacity.

As a result of a work injury which occurred on September 4, 2012, Plaintiff sustained a "rupture of the long head of biceps

2

tendon and partial thickness tear of supraspinatus right shoulder." (R. 285.) Naveen Singanamala, M.D., performed right shoulder arthroscopy and mini-open repair. (R. 277.)

Follow-up treatment records show that Plaintiff had physical/occupational therapy and medication management. (R. 288-314.) As of February 27, 2013, which was seventeen weeks after surgery, office notes indicated range-of-motion and strength were improved to near-normal and Plaintiff did not have pain. (R. 315.) At the time, Plaintiff was on modified work duty. (*Id.*)

On April 24, 2013, Dr. Singanamala advised Plaintiff to continue his home exercise program, and he was allowed to do lifting below shoulder level but no lifting/pulling/pushing at or above shoulder level. (R. 320.)

In July 2013, Plaintiff continued on modified duty and reported to Dr. Singanamala that he had shoulder pain after doing strenuous lifting at work. (R. 321.) Plaintiff had limited range-of-motion of his right shoulder. (R. 322.) Dr. Singanamala advised Plaintiff to do activity as tolerated and exercise moderation in lifting. (R. 323.)

In December, Plaintiff again reported right shoulder pain which he said resulted from pushing a heavy piece of wood about the level of his right shoulder a few days earlier. (R. 324-25.) Examination showed full range-of-motion, positive Yergason's test, positive Hawkins's test, and positive O'Brien's test. (R. 325.)

3

Dr. Singanamala advised Plaintiff to avoid lifting and avoid activity at or above shoulder level. (R. 326.)

In January 2014, Plaintiff reported to Dr. Singanamala that his pain had improved since he was not lifting weights at work but the pain was present when he tried to lift weight and did anything at or above shoulder level. (R. 328.) Plaintiff also reported he did not have pain at rest. (*Id.*) Dr. Singanamala noted that Plaintiff was recovering well from his surgery and he had ninety-five percent of full strength and full range of motion. (*Id.*) Right shoulder exam was normal. (*Id.*) Dr. Singanamala specifically stated that Plaintiff should continue with activities that did not involve lifting weights over forty pounds and he should have no activity at or above shoulder level. (R. 329.)

In correspondence dated September 16, 2014, Dr. Singanamala opined that Plaintiff's right shoulder was not at full range-of-motion or full-strength when compared to his left shoulder, he was unlikely to recover one hundred percent function, and he would be at increased risk of injury if he were "to start lifting heavy weights, or above the recommendations that include a lifting limit of 20 pounds and no lifting to or above shoulder level." (R. 277.)

On October 6, 2014, Plaintiff had a Functional Capacity Assessment conducted by Rebecca Piccolo, OTR/L. (R. 339-41.) She found that Plaintiff had the ability to "Lift-Carry" 55 pounds occasionally, forty pounds frequently, and ten pounds constantly;

he had the ability "From floor" thirty pounds occasionally, twenty pounds frequently, and zero pounds constantly; he had the ability "To shoulder" twenty-five pounds occasionally, twenty pounds frequently, and zero pounds constantly.[1]  (R. 339.)

Kaliopi Nestor, M.D., conducted a consultative examination on June 2, 2015.  (R. 342-45.)  Plaintiff reported to Dr. Nestor that Dr. Singanamala had put him on permanent restrictions of a twenty-pound lifting limit and no above shoulder activities in the right upper extremity.  (R. 342.)  Dr. Nestor completed a Medical Source Statement of Ability to Do Work-Related activities (Physical) on the same date.  (R. 350-56.)  He concluded Plaintiff could lift up to ten pounds continuously, eleven to twenty pounds frequently, twenty-one to fifty pounds occasionally, and never over that.  (R. 350.)

On June 25, 2015, State agency reviewing consultant Nghia Van Tran, M.D., reviewed records including the Function Report and Dr. Nestor's opinion.  (R. 54-56.)  He opined that Plaintiff could occasionally lift fifty pounds and frequently lift twenty-five pounds.  (R. 59.)  Dr. Tran acknowledged the twenty pound lifting restriction identified by Dr. Singanamala and set out in the Functional Capacity Evaluation, and he noted that he considered Dr. Nestor's report.  (R. 59-60.)  Dr. Tran stated that his RFC

---

[1] "Occasionally" is defined as 1-33% of the time, "Frequently" is defined as 34-66% of the time, and "constantly" is defined as 67-100% of the time.  (R. 339.)

5

assessment "partially reflects" or is "partially consistent" with these opinions. (*Id.*)

After Dr. Singanamala moved, Plaintiff saw Ted B. Eshbach, M.D., for follow-up of his shoulder problem on October 26, 2016. (R. 363.) Dr. Eshbach noted Plaintiff was applying for disability, and he stated he would rely upon the Functional Capacity Evaluation to determine Plaintiff's capabilities. (*Id.*) He further noted that, although Plaintiff would not likely be able to perform his previous strenuous work, he thought less strenuous work would be possible. (*Id.*)

Dr. Eschbach completed a Physical Medical Source Statement on April 7, 2017. (R. 371-74.) He indicated he saw Plaintiff only once (the October 26, 2016, visit) for his chronic shoulder pain. (R. 371.) He noted the clinical signs of slight limitation of the right shoulder motion and again pointed to the Functional Capacity Evaluation for specific limitations. (R. 371, 373.)

## *B. HEARING TESTIMONY*

When questioned by ALJ Romeo at the June 19, 2017, hearing, Plaintiff identified his lifting limitations as the reason he felt he could not work. (R. 34.) He said a gallon of milk was the heaviest thing he could lift around the house. (R. 41.)

Plaintiff explained he had not had health insurance since he left his employment with Emporium Hardwoods so he had to pay for healthcare himself. (R. 43.) He estimated that the last time he

had seen a doctor was September 2016. (*Id.*)

Dr. Eric Dennison testified as a vocational expert over the objection of Plaintiff's attorney, Matthew Lager. (R. 46.) Mr. Lager stated he could not stipulate to Dr. Dennison's qualifications because review of his CV and resume did not show that he had any formal training related to vocation. (R. 46.) With a doctorate in continuing education and a master's degree in psychology, Mr. Lager stated it did not appear that Dr. Dennison ever worked in a professional capacity in any sort of vocational field. (*Id.*) Dr. Dennison responded that he had been in the vocational field for almost twenty years as a career counselor in the Navy and in his private companies where he worked with job services including placement. (R. 46.) ALJ Romeo concluded Dr. Dennison's testimony and CV established substantial evidence to allow him to testify as an expert in vocational placement. (R. 47.)

Following this determination, ALJ Romeo identified a hypothetical individual of Plaintiff's age, education, and past jobs who was limited to medium work with the additional limitations of "frequent reach, handle, finger, and feel with both upper extremities. However, no overhead reaching or overhead lifting with the right arm. Never climb ropes, ladders, or scaffolds. Never exposed to high exposed places or moving mechanical parts." (R. 48.) Dr. Dennison concluded the individual could not perform

7

Plaintiff's past relevant work but he could perform other work including linen room attendant, checker, and caretaker. (R. 48-49.) Dr. Dennison also identified jobs at the light level with the same additional limitations as the first hypothetical. (R. 49-50.)

When asked by Plaintiff's attorney whether an individual who could not lift more than twenty pounds with his right dominant arm could perform the three medium duty level jobs identified, Dr. Dennison responded "[i]f they can only lift up to 20 pounds with the right dominant arm, then that would refer to them [sic] light work." (R. 51.)

In summation, Plaintiff's attorney noted Dr. Singanamala, Dr. Eschach, and the Functional Capacity Evaluation indicated a twenty-pound restriction on his right arm which would limit him to light duty at the most, and given Plaintiff's onset date and age, under the grid rules a fully favorable finding would be appropriate. (R. 51-52.)

### *C.  ALJ DECISION*

In his August 11, 2017, Decision, ALJ Romeo concluded Plaintiff had the severe impairments of right shoulder status post arthroscopy, mini open rotator cuff repair, subscapularis tendon repair, and superior labral repair. (R. 17.) ALJ Romeo found Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (*Id.*) He assessed Plaintiff to have the RFC to perform medium work except he

8

could "frequently reach, handle, finger, and feel with both upper extremities; but no overhead reaching or lifting with the right arm. The claimant can never climbs [sic] ropes/ladders/scaffolds; and never be exposed to high exposed places or moving, mechanical parts." (R. 18.)

With this RFC, ALJ Romeo concluded Plaintiff could not perform his past work but jobs existed in significant numbers in the national economy that Plaintiff could perform. (R. 21.) Therefore, he determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from January 4, 2014, through the date of the decision. (R. 22.)

## **II. Disability Determination Process**

The Commissioner is required to use a five-step analysis to determine whether a claimant is disabled.[2] It is necessary for the

---

[2] "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). The Act further provides that an individual is disabled

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

9

Commissioner to ascertain: 1) whether the applicant is engaged in a substantial activity; 2) whether the applicant is severely impaired; 3) whether the impairment matches or is equal to the requirements of one of the listed impairments, whereby he qualifies for benefits without further inquiry; 4) whether the claimant can perform his past work; 5) whether the claimant's impairment together with his age, education, and past work experiences preclude him from doing any other sort of work. 20 C.F.R. §§ 404.1520(b)-(g), 416.920(b)-(g); *see Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 888-89 (1990).

If the impairments do not meet or equal a listed impairment, the ALJ makes a finding about the claimant's residual functional capacity based on all the relevant medical evidence and other evidence in the case record. 20 C.F.R. § 404.1520(e); 416.920(e). The residual functional capacity assessment is then used at the fourth and fifth steps of the evaluation process. *Id.*

The disability determination involves shifting burdens of proof. The initial burden rests with the claimant to demonstrate that he or she is unable to engage in his or her past relevant work. If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience

---

42 U.S.C. § 423(d)(2)(A).

10

can perform. *Mason v. Shalala*, 993 F.2d 1058, 1064 (3d Cir. 1993).

As set out above, the instant decision was decided at step five of the sequential evaluation process when the ALJ found that jobs existed in significant numbers in the national economy which Plaintiff could perform. (R. 21.)

### III. Standard of Review

This Court's review of the Commissioner's final decision is limited to determining whether there is substantial evidence to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). The Third Circuit Court of Appeals further explained this standard in *Kent v. Schweiker*, 710 F.2d 110 (3d Cir. 1983).

> This oft-cited language is not . . . a talismanic or self-executing formula for adjudication; rather, our decisions make clear that determination of the existence *vel non* of substantial evidence is *not* merely a quantitative exercise. A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence-- particularly certain types of evidence (e.g., that offered by treating physicians)--or if it really constitutes not evidence but mere conclusion. *See* [*Cotter*, 642 F.2d] at 706

11

> ("'Substantial evidence' can only be
> considered as supporting evidence in
> relationship to all the other evidence in the
> record.") (footnote omitted). The search for
> substantial evidence is thus a qualitative
> exercise without which our review of social
> security disability cases ceases to be merely
> deferential and becomes instead a sham.

*Kent*, 710 F.2d at 114.

This guidance makes clear it is necessary for the ALJ to analyze all probative evidence and set out the reasons for his decision. *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119-20 (3d Cir. 2000) (citations omitted). If he has not done so and has not sufficiently explained the weight given to all probative exhibits, "to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979). In *Cotter*, the Circuit Court clarified that the ALJ must not only state the evidence considered which supports the result but also indicate what evidence was rejected: "Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter*, 642 F.2d at 706-07. However, the ALJ need not undertake an exhaustive discussion of all the evidence. *See, e.g., Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).

A reviewing court may not set aside the Commissioner's final decision if it is supported by substantial evidence, even if the court would have reached different factual conclusions. *Hartranft*, 181 F.3d at 360 (*citing Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986); 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ."). "However, even if the Secretary's factual findings are supported by substantial evidence, [a court] may review whether the Secretary, in making his findings, applied the correct legal standards to the facts presented." *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983) (internal quotation omitted). Where a claimed error would not affect the outcome of a case, remand is not required. *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005). Finally, an ALJ's decision can only be reviewed by a court based on the evidence that was before the ALJ at the time he or she made his or her decision. *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001).

## **IV. Discussion**

As set out above, Plaintiff asserts the Acting Commissioner's decision must be reversed for the following reasons: 1) the ALJ improperly determined Plaintiff had the RFC to perform medium work; 2) the ALJ did not address Plaintiff's non-repaired proximal biceps tendon tear; and 3) the ALJ improperly overruled Plaintiff's counsel's objection to the vocational expert. (Doc. 9 at 6.)

13

### *A. MEDIUM WORK DETERMINATION*

Plaintiff first asserts ALJ Romeo's determination that he could perform medium work is not supported by substantial evidence: it is based on a misinterpretation of Dr. Nestor's restrictions; it is not consistent with any of the medical records evidence; and it was the result of the ALJ substituting his lay interpretation of the medical evidence for the interpretations of the physicians. (Doc. 9 at 7.) Defendant responds that substantial evidence supports the ALJ's finding that Plaintiff could perform a limited range of medium work. (Doc. 10 at 10.) The Court concludes Plaintiff has satisfied his burden of showing error on the basis alleged and this matter must be remanded for further consideration.

"Medium work requires lifting no more that 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c). SSR 83-10 notes that "[b]eing able to do frequent lifting or carrying of objects weighing up to 25 pounds is often more critical than being able to lift up to 50 pounds at a time." SSR 83-10, 1983 WL 31251, at *6. "'Frequent' means occurring from one-third to two-thirds of the time." *Id.*

In his explanation of the RFC assessed, ALJ Romeo gave "great weight" to the opinion of Dr. Nestor. (R. 20.) He stated Dr. Nestor reported Plaintiff "was limited to medium lifting/carrying with occasional reaching overhead with the left hand; right hand was limited to frequent reaching, occasional pushing/pulling and no

14

reaching overhead" and other postural limitations. (*Id.*) The ALJ did not discuss or acknowledge Dr. Nestor's conclusion that Plaintiff could lift/carry eleven to twenty pounds frequently (R. 350), and he did not explain how the assessed limitation allowed Plaintiff to do medium work which requires the ability to frequently lift up to twenty-five pounds. 20 C.F.R. § 404.1567.

Dr. Nestor's opinion is the only opinion of record accorded significant weight: ALJ Romeo gave Dr. Singanamala's opinion that Plaintiff would be effectively unable to use his right shoulder at work limited weight[3]; he gave Dr. Tran's opinion that Plaintiff could engage in medium work minimal weight because it did "not include right shoulder restrictions as a result of the claimant's residual pain"; he gave Ms. Piccolo's opinion that Plaintiff was limited to light lifting/carrying little weight because it was "not consistent with the medical evidence as a whole [] and the opinion of Dr. Eshbach, who reported the claimant was to avoid heavy lifting/pushing/pulling and overhead lifting"; and he gave moderate weight to this lifting limitation of Dr. Eshbach. (R. 20.)

Given the ALJ's reliance on Dr. Nestor's opinion and the discrepancy between the lifting/carrying limitations assessed by

---

[3] ALJ Romeo noted that Dr. Singanamala had reported Plaintiff could lift 40 pounds and was at 95% recovery (R. 20) but this report preceded Dr. Singanamala's recommendation that Plaintiff not lift more than twenty pounds by eight months (R. 277, 328-29) and Dr. Singanamala's limitation was based on his assessment that Plaintiff would be "at increased risk of reinjuring his shoulder" if he were to lift above the recommended level (R. 277).

15

Dr. Nestor and the definition of medium work, the Court cannot conclude ALJ Romeo's RFC assessment is supported by Dr. Nestor's opinion. Further, the Court cannot conclude the RFC assessment is supported by substantial evidence for several additional reasons. First, Dr. Nestor's lifting/carrying limitations are consistent with certain findings made in the detailed Functional Capacity Evaluation (R. 339) which ALJ Romeo characterized as "at most light lifting/carrying" (R. 20). Second, although he assigned moderate weight to some findings made by Dr. Eshbach (R. 20), ALJ Romeo failed to note that Dr. Eschbach endorsed the FCE findings regarding lifting/carrying (*see* R. 373). Certainly Dr. Eshbach's endorsement of the FCE is probative evidence which required consideration by the ALJ and, if he considered the evidence, an explanation from the ALJ of the reason for rejecting it. *Dobrowolsky*, 606 F.2d at 406; *Cotter*, 642 F.2d at 706-07. Importantly, ALJ Romeo's rejection of the FCE findings on the basis of Dr. Eshbach's opinion (R. 20) is flawed because Dr. Eshbach agreed with the FCE's lifting/carrying limitations (R. 373).

Defendant's argument that Dr. Nestor's opinion supports the ALJ because Dr. Nestor found that Plaintiff could occasionally lift/carry up to fifty pounds which is consistent with medium work (Doc. 10 at 11) does not address the medium work requirement of frequently being able to lift up to twenty-five pounds, 20 C.F.R. § 404.1567(c), a requirement which is not consistent with Dr.

16

Nestor's opinion that Plaintiff could only lift twenty pounds frequently (R. 350), and which SSR 83-10 explains is "often more critical" than the fifty-pound consideration, 1983 WL 31251, at *6. Further, Defendant's assertion that the State agency opinion of Dr. Tran supports medium work (*id.*) does not address ALJ Romeo's assignment of limited weight to the opinion or the general supremacy of examining and treating opinions over that of a non-examining source established in the relevant regulation, 20 C.F.R. § 404.1527(c).[4] Finally, Defendant's reliance on Dr. Eshbach's statement that Plaintiff could perform "'less strenuous duties'" in some capacity other than his previous heavy work (Doc. 10 at 12) does not support an ability to do medium work in that work which is "less strenuous" than heavy work also includes work at the sedentary and light levels.

These findings require remand because they show that ALJ has not provided a coherent explanation of the basis for his RFC assessment. In sum, the ALJ noticeably fails to discuss the twenty-pound right arm lifting restriction assessed by examining sources and its significance in the context of the ability to perform medium work as evidenced by the definition of medium work

---

[4] Dr. Tran reviewed the FCE and Dr. Nestor's opinion which both identified the twenty-pound lifting restriction but he did not specifically explain the different lifting limitation he assessed, i.e., the ability to lift twenty-five pounds frequently rather than the twenty pounds expressed by examining providers. (*Id.*)

17

and the vocational expert's testimony. (Doc. 9 at 6 (citing 20 C.F.R. § 404.1567(b)-(c)); R. 51.) Without explanation as to why he disagreed with the lifting/carrying restriction of the examining providers which would limit Plaintiff to light work, the ALJ found Plaintiff capable of frequently lifting twenty-five pounds. Interestingly, ALJ Romeo and Defendant gloss over the asserted dispositive distinction in this case between finding Plaintiff capable of medium work and light work. (*See* Doc. 9 at 12: R. 51-52.) Upon remand, this distinction and Plaintiff's lifting ability warrant further consideration and detailed discussion.

## B.  *Proximal Biceps Tendon*

Plaintiff contends the ALJ failed to address his non-repaired tear to his proximal biceps tendon and failed to consider the limitations imposed thereby. (Doc. 9 at 12.) Defendant responds that Plaintiff has not identified limitations associated with the non-repaired tendon, and, therefore, has not shown error on the basis alleged. (Doc. 10 at 16 (citing *Petition of Sullivan*, 904 F.2d 826, 845 (3d Cir. 1990) (a claimant must show that he has associated functional limitations that prevent him from performing substantial gainful activity)).) The Court agrees that Plaintiff has not asserted the required functional limitations associated with the proximal biceps tendon. However, because remand is required for the reasons discussed above, consideration of any associated limitations which may be established in the record

18

should be addressed.

## C. *Vocational Expert Objection*

Plaintiff maintains the ALJ improperly overruled his counsel's objection to Dr. Dennison serving as a vocational expert. (Doc. 9 at 13.) Defendant responds that the ALJ did not err on the basis alleged and Plaintiff has not shown how he was prejudiced by the alleged impropriety. (Doc. 10 at 16-17 (citing *Gachette v. Weinberger*, 551 F.2d 39, 41 (3d Cir. 1977); *Hall v. Sec'y of Health, Educ. and Welfare*, 602 F.2d 1372, 1378 (9th Cir. 1979)).) Plaintiff has not suggested specific harm related to the alleged error and asserts that he need not do so because the burden shifts to Defendant at step five. (Doc. 11 at 5-6.) Given the facts of this case, the record before the Court, and Plaintiff's general averments, the Court finds no basis to deviate from the general rule that "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination," *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009). Because Plaintiff does not point to a specific harm associated with the claimed error, the Court declines to find error on the basis alleged.

## V. Conclusion

For the reasons discussed above, the Court concludes this matter is properly remanded to the Acting Commission for further action consistent with this opinion. An appropriate Order is filed

19

simultaneously with this Memorandum.

                                        <u>S/Richard P. Conaboy</u>
                                        RICHARD P. CONABOY
                                        United States District Judge

DATED: October 19, 2018